**NOT PRECEDENTIAL**

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT
_____

No. 14-1417
_____

ALVIN EVANS SEEPAUL,
                                        Petitioner

v.

ATTORNEY GENERAL OF THE UNITED STATES OF AMERICA,
                                        Respondent
_____

On a Petition For Review of an Order
of the Board of Immigration Appeals
(Agency No. (A093-453-590)
Immigration Judge: Michael W. Straus
_____

Submitted Pursuant to Third Circuit LAR 34.1(a)
November 19, 2014

Before: SMITH, HARDIMAN and BARRY, <u>Circuit</u> <u>Judges</u>

(Opinion filed: December 4, 2014)

_____

OPINION[*]
_____

---

[*] This disposition is not an opinion of the full Court and pursuant to I.O.P. 5.7 does not constitute binding precedent.

PER CURIAM

Petitioner Alvin Evans Seepaul ("Seepaul") petitions for review of the Board of Immigration Appeals' decision denying his motion to reopen removal proceedings. For the reasons that follow, we will deny the petition for review.

Seepaul, a native and citizen of Trinidad and Tobago (hereinafter "Trinidad"), was admitted to the United States as a nonimmigrant visitor for pleasure with authorization to remain until April 20, 2000. He overstayed, and was placed in removal proceedings pursuant to Immigration & Nationality Act ("INA") § 237(a)(1)(B), 8 U.S.C. § 1227(a)(1)(B). Seepaul, who has two U.S. citizen children, Brandon and Kayleigh, applied for cancellation of removal for certain nonpermanent residents pursuant to INA § 240A(b)(1), 8 U.S.C. § 1229b(b)(1). At his merits hearing before an Immigration Judge on December 12, 2011, Seepaul emphasized Brandon's hearing and speech problems as the basis for his claim of exceptional and extremely unusual hardship to a qualifying relative. Brandon, who was born in 2004, has a hearing impairment that required surgical intervention; he now receives speech therapy in school. Brandon lived with his mother when he first started school but Seepaul, who lives with Kayleigh's mother, maintained close contact with Brandon, carries medical insurance for him, and provides for him financially. With respect to Kayleigh, who would return to Trinidad with him and her mother, Seepaul feared that she would be in danger as a result of his brother Kelvin's police work. In the course of Kelvin's police work, he testified against certain individuals who kidnapped and killed an American citizen. Seepaul testified that Kelvin

2

now lives in Florida with his family. Seepaul's other siblings remain in Trinidad, but they have moved to a different place because of Kelvin's participation in the prosecution. A.R. 156-58.

Following the hearing, the IJ found Seepaul removable as charged and denied his application for cancellation of removal, determining that he could not meet the "exceptional and extremely unusual hardship" standard, see Matter of Monreal, 23 I. & N. Dec. 56 (BIA 2001) (en banc), and Matter of Recinas, 23 I. & N. Dec. 467 (BIA 2002) (en banc). The IJ found that there was little testimony regarding a possible hardship to Kayleigh, and the testimony and evidence relating to Brandon was not unusual. The IJ reviewed Brandon's medical history and found that he is now in regular education classes, although he continues to receive speech therapy. The IJ further found that Brandon would remain in the United States with his mother, who was employed full-time. The IJ noted Brandon's mother's testimony that she fears that Brandon will regress if his father is made to leave the country, and she believes that things will be more difficult for her and Brandon financially. The IJ concluded, nevertheless, that, although the separation from Seepaul would affect Brandon, separation of this nature is common and not unusual. Importantly, Brandon's hearing issues were under control and he was otherwise doing well in school except for receiving speech therapy. Seepaul was granted voluntary departure, and an order of removal was issued in the alternative.

Seepaul appealed to the Board of Immigration Appeals, contending in general that he had met the standard for cancellation of removal, and arguing in particular that the IJ had ignored his evidence showing that his move to Trinidad would place Kayleigh in

3

danger, given his brother's role as a police witness in a notorious murder case; and ignored his evidence with respect to the fact that Brandon and Kayleigh would be separated from each other by his removal from the United States.

On August 20, 2013, the Board dismissed the appeal, agreeing with the IJ that the evidence did not establish that Seepaul's removal from the United States would result in exceptional and extremely unusual hardship to either Brandon or Kayleigh. The Board agreed with the IJ that, although the separation would have some effect on Brandon, the hardship would not rise to the level of exceptional and extremely unusual. The Board furthered agreed with the IJ that Seepaul's removal would not result in exceptional and extremely unusual hardship to Kayleigh. The Board reasoned that she had not yet started school in the United States and thus would not suffer a separation in that respect; moreover, diminished educational opportunities in Trinidad do not satisfy the exceptional and extremely unusual hardship test, see Matter of Andazola, 23 I. & N. Dec. 319 (BIA 2002) (en banc). In addition, Seepaul, who had the burden of proof, see 8 C.F.R. § 1240.8(d), had failed to adequately show how his brother's involvement in prosecuting a notorious murder would cause Kayleigh problems in Trinidad. The Board stated that the administrative record showed that Kelvin had worked for an insurance company since 2008, and that he continues to live in Trinidad without incident.[1]

On October 11, 2013, Seepaul filed a timely motion to reopen with the Board, 8 C.F.R. § 1003.2(c)(1), contending that he had new evidence in support of his application

---

[1] This proved to be a misstatement of the administrative record by the Board which Seepaul chose to a address through a motion a to reopen.

4

for cancellation of removal which was previously unavailable; specifically, he had court documentation that he had been granted custody of Brandon, and he had an order from an Immigration Judge in Miami granting his brother's application for asylum. Seepaul argued that reopening was warranted because the agency's hardship determination was based on Brandon's remaining in the U.S. with his mother, but, since the merits hearing, she had decided to join the New York City Police Department and had given custody of Brandon to Seepaul; Brandon would thus now be leaving the U.S. with him. Additionally, since the merits hearing, Kelvin had been granted asylum based on his role in prosecuting the notorious murder/kidnapping. Seepaul contended that the Board erred in its original decision in stating that Kelvin continued to live in Trinidad without incident.

On January 22, 2014, the Board denied the motion to reopen, holding that the new evidence proffered with the motion did not meet the requirements for reopening removal proceedings under 8 C.F.R. § 1003.2(c)(1) and Matter of Coelho, 20 I. & N. Dec. 464 (BIA 1992). Once again, the Board determined that the hardship that Seepaul had shown was not substantially different from that which would normally be expected when a parent returns with his children to a less developed country. Similarly, the Board was not persuaded that Kelvin's recent grant of asylum would affect Brandon and Kayleigh in Trinidad. In sum, the Board concluded that further hearings on Seepaul's application for cancellation of removal were not warranted. The Board further declined to *sua sponte* reopen proceedings, see Matter of J-J-, 21 I. & N. Dec. 976 (BIA 1997).

5

Seepaul has timely petitioned for review.[2]  We review the Board's denial of a motion to reopen for abuse of discretion.  Immigration & Naturalization Serv. v. Doherty, 502 U.S. 314, 323 (1992).  "A motion to reopen proceedings shall state the new facts that will be proven at a hearing to be held if the motion is granted and shall be supported by affidavits or other evidentiary material....  A motion to reopen proceedings shall not be granted unless it appears to the Board that evidence sought to be offered is material and was not available and could not have been discovered or presented at the former hearing."  8 C.F.R. § 1003.2(c)(1).  The Board may deny a motion to reopen where the movant has not demonstrated prima facie eligibility for the substantive relief sought.  Immigration & Naturalization Serv. v. Abudu, 485 U.S. 94, 105 (1988).  The prima facie standard for a motion to reopen requires the movant to produce objective evidence showing a reasonable likelihood that he can establish that he is entitled to relief.  See Sevoian v. Ashcroft, 290 F.3d 166, 175 (3d Cir. 2002).

We will deny the petition for review.  Cancellation of removal is available for a nonpermanent resident who has been physically present in the U.S. for at least 10 years, has been a person of good moral character, has not been convicted of certain crimes, and "establishes that removal would result in exceptional and extremely unusual hardship to the alien's spouse, parent, or child, who is a citizen of the United States or an alien lawfully admitted for permanent residence."  8 U.S.C. § 1229b(b)(1)(A)-(D).  Congress

---

[2] The briefing schedule was stayed for a time while the Department of Homeland Security evaluated the case for a possible favorable exercise of prosecutorial discretion. The case is now ripe for decision, DHS having declined to exercise discretion in Seepaul's favor.

intended that the exceptional and extremely unusual hardship standard be a stringent one. See Andazola, 23 I. & N. Dec. at 322; Recinas, 23 I. & N. Dec. at 470. Monreal, 23 I. & N. Dec. 56, holds that, to establish exceptional and extremely unusual hardship, the applicant must show that the qualifying relative would suffer hardship substantially beyond that which would normally result from deportation. See id. at 59. See also Andazola, 23 I. & N. Dec. at 322. Nevertheless, the Board will consider "the ages, health, and circumstances of qualifying ... relatives." Monreal, 23 I. & N. Dec. at 63. An applicant who had a qualifying child "with very serious health issues, or compelling special needs in school" would have a strong application. Id. See also Mendez v. Holder, 566 F.3d 316, 322-23 (2d Cir. 2009) (Board required to consider alien's testimony about his son's need for highly specialized care, and the difficulty of obtaining the necessary care in Mexico, in determining exceptional and extremely unusual hardship).

With the standard in mind, we conclude that the Board did not abuse its discretion in determining that Seepaul did not show in his motion to reopen that he is prima facie eligible for cancellation of removal, that is, we conclude that he failed to show a reasonable likelihood that he can establish that he is entitled to relief. See Sevoian, 290 F.3d at 175. Seepaul's new evidence showed that he now has physical custody of Brandon, meaning that Brandon will now accompany him and Kayleigh to Trinidad, and that his brother Kelvin was awarded asylum based on his fear of those in Trinidad who might seek revenge because he testified against their compatriots. Seepaul's first argument concerning Brandon, see Petitioner's Informal Brief, at 3, does not persuasively

7

establish a prima facie case for cancellation of removal based on exceptional and extremely unusual hardship. Brandon will now not be separated from Seepaul and Kayleigh, and, although he has had speech and hearing problems, and will likely continue to need speech services in Trinidad, Seepaul failed to offer evidence with his motion to reopen regarding education in Trinidad, or evidence to show that Brandon's hearing and speech needs cannot be met in Trinidad. Seepaul has the burden to prove his eligibility for cancellation of removal, 8 C.F.R. § 1240.8(d), which means that he has the burden to make a prima facie showing that Brandon will continue to have serious health issues and will need medical care or specialized services that cannot be obtained in Trinidad. Monreal, 23 I. & N. Dec. at 63; Mendez, 566 F.3d at 322-23. He did not meet this evidentiary burden in his motion to reopen. Seepaul's second argument concerning his fear that Brandon and Kayleigh will be harmed because of their uncle's testimony, see Petitioner's Informal Brief, at 3, also does not provide a basis for reopening the removal proceedings. The item he attached to his motion to reopen, an Immigration Judge's summary order granting asylum, provides no information about the basis for the IJ's grant of relief to Kelvin Seepaul. More specifically, it provides no information to support a claim that Kelvin's extended family, including Seepaul, Brandon, and Kayleigh, has any reason to fear those individuals who would seek to harm Kelvin because of Kelvin's role in the prosecution of the murder/kidnapping case. Again, Seepaul has the burden of proof on this issue, 8 C.F.R. § 1240.8(d).

For the foregoing reasons, we will deny the petition for review.